IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**07/31/2009**

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| VIKING OFFSHORE (USA) INC., | ) | CASE NO. 08-31219-H3-11 |
| | ) | |
| Debtors, | ) | |
| | ) | |
| VIKING PROSPECTOR, INC., ET AL., | ) | |
| | ) | |
| v. | ) | ADV. NO. 08-3296 |
| | ) | |
| XTREME INDUSTRIES, L.L.C., | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GULF COPPER & | ) | |
| MANUFACTURING CORP., | ) | |
| | ) | |
| | ) | |

MEMORANDUM OPINION

The court has held a hearing on "Debtors' Motion for
Summary Judgment on Proof of Claim Asserted by Xtreme Industries,
LLC" (Docket No. 26), "Gulf Copper & Manufacturing Corporation
a/k/a Gulf Copper Dry Dock & Rig Repair's Motion for Summary
Judgment against Xtreme Industries, LLC" (Docket No. 29), and
"Xtreme Industries, LLC's Motion for Partial Summary Judgment
Against Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper
Dry Dock & Rig Repair" (Docket No. 32).  The following are the
Findings of Fact and Conclusions of Law of the court.  A separate
conforming Judgment will be entered.  To the extent any of the
Findings of Fact are considered Conclusions of Law, they are

adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

<u>Background</u>

Viking Offshore (USA) Inc., Viking Producer Inc., Viking Prospector Inc., Viking Century Inc., and Viking Drilling ASA ("Viking") filed voluntary petitions under Chapter 11 of the Bankruptcy Code on February 29, 2008.  The cases were jointly administered, by order entered March 4, 2008, and were designated as a complex Chapter 11 case, by order entered March 10, 2008.

The claims addressed in the above captioned adversary proceeding were consolidated, by order entered October 2, 2008 (Docket No. 11), from a complaint[1] filed on May 2, 2008 by Xtreme Industries, LLC ("Xtreme") against Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair ("Gulf Copper"), in the United States District Court for the Southern District of Texas, in Civil Action No. 3:08cv102 (described by Xtreme as a suit on a sworn account pursuant to Rule 185 of the Texas Rules of Civil Procedure), and the complaint in the instant adversary proceeding, filed on August 18, 2008 by Viking against Xtreme.

---

[1] The complaint was referred to the Bankruptcy Court, and was docketed as Adversary No. 08-3339.  It has been consolidated into the instant adversary proceeding.

In the instant consolidated adversary proceeding, Xtreme, a subcontractor, asserts claims against Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair ("Gulf Copper"), a contractor, on breach of contract and quantum meruit theories, for work performed on Viking's drilling rig, the "Viking Producer."  Xtreme also filed a proof of claim in the Viking Chapter 11 case, asserting a statutory maritime lien on the Viking Producer.  Viking objects to Xtreme's claim, asserting that it has paid all invoices submitted directly by Xtreme, and that there is a failure of consideration because Xtreme's work was not satisfactory.  Viking also seeks an affirmative recovery for what it asserts was damage caused by Xtreme.

<u>Motions for Summary Judgment</u>

<u>Viking's Motion for Summary Judgment</u>

In the instant motion filed by Viking, Viking seeks summary judgment determining that the maritime lien asserted by Xtreme is invalid, on grounds Gulf Copper, with which Xtreme contracted, lacked authority to bind the Viking Producer. Alternatively, Viking seeks summary judgment determining that any lien Xtreme may assert was waived, pursuant to provisions in the contract between Xtreme and Gulf Copper.  In response, Xtreme argues that its lien is valid, because it was given daily schedule directives by Odin Rig Services, Inc. ("Odin"), Viking's agent.  Xtreme asserts that Viking lacks capacity to assert the

3

waiver provision in the contract between Xtreme and Gulf Copper, because Viking was not a third-party beneficiary of the contract. Xtreme also asserts that the waiver provision is unenforceable, because Gulf Copper breached the contract by failing to pay Xtreme.

### Gulf Copper's Motion for Summary Judgment

In the instant motion filed by Gulf Copper, Gulf Copper asserts five grounds for summary judgment. First, Gulf Copper seeks summary judgment determining that the claims made by Xtreme on five invoices and other unbilled charges are not authorized under the contract between Xtreme and Gulf Copper, asserting that the contract required that Xtreme request a written change to the purchase order, and Xtreme failed to do so. Second, Gulf Copper seeks summary judgment determining that Xtreme is not entitled to payment on two additional invoices, on grounds there is a dispute as to the quality of the work represented in the two invoices. Third, Gulf Copper seeks summary judgment determining that the unbilled charges are barred by a contractual provision addressing suspension or termination of the work. Fourth, Gulf Copper seeks summary judgment determining that Xtreme is not entitled to assert recovery on a quantum meruit theory, due to the existence of a written contract. Fifth, Gulf Copper seeks summary judgment determining that Xtreme is not entitled to an award of attorney fees. In response, Xtreme argues that it was directed to do the

4

work covered by the invoices and unbilled charges by Odin.
Xtreme asserts that genuine issues of material fact exist
regarding the remaining issues on which Gulf Copper seeks summary
judgment.

<u>Xtreme's Motion for Summary Judgment</u>

        In the instant motion filed by Xtreme, Xtreme asserts
that it is entitled to summary judgment because it filed suit on
a sworn account, and Gulf Copper has not filed a verified denial.
In response, Gulf Copper asserts that there are genuine issues of
material fact as to whether Gulf Copper is liable for the debt.
Also, Gulf Copper argues that the Texas rule of civil procedure
on which Xtreme relies is a procedural rule that does not apply
in federal court.

<u>The Summary Judgment Evidence</u>

        On August 24, 2006, Viking, acting through Odin,
entered into a contract with Gulf Copper (the "Viking-Gulf Copper
MSA") under which Gulf Copper would sell such products and
services to Viking as Viking would order, by purchase order.
(Docket No. 26-2).  The Viking-Gulf Copper MSA provides in
pertinent part[2]:

> 11.3     Supplier shall be entitled to exercise a
> maritime lien upon the work or the subject vessel, its
> equipment and its appurtenances for all sums due to the
> Supplier in the event of Buyer's failure to tender
> payment on the terms outlined in Article 3.

---

[2]The Viking-Gulf Copper MSA identifies "Buyer" as Viking,
and "Supplier" as Gulf Copper.

11.4       Except for Supplier's right to assert a
maritime lien in the event of Buyer's failure to tender
payment on the terms outlined in Article 3, Supplier
agrees to pay all claims for labor, materials, services
and supplies furnished by Supplier hereunder and agrees
to allow no lien or charge to be fixed upon the rigs to
which products and services are to be provided, or
other property of Buyer or the party for whom Buyer is
performing services.

On November 15, 2006, Gulf Copper entered into a
contract (the "Gulf Copper-Xtreme MSA") with Xtreme, under which
Gulf Copper would issue purchase orders for work, and Xtreme
would perform the work.  (Docket No. 26-1).  The Gulf Copper-
Xtreme MSA provides in pertinent part[3]:

1.        SCOPE OF AGREEMENT

* * *

As between the parties hereto, this Agreement shall
control and govern all Work and any applicable or
and/or written specifications, including Purchase
Orders, which are in any way connected with Company
including, but not limited to, the performance of all
Work by Contractor, its affiliates, and/or its and
their subcontractors for or with Company or its parent,
holding or affiliated companies.

2.        PERFORMANCE OF THE WORK

From time to time, Company may issue individual
Purchase Orders requesting Contractor to perform
certain Work.  In the event of a conflict between this
Agreement and any Purchase Orders issued hereunder, the
provisions of this Agreement shall govern over the
conflicting terms of the Purchase Order.  The Work
shall be performed in strict conformity with the terms,
conditions, specifications and requirements contained
in, attached to, or referenced by the Purchase Order.

---

[3]The Gulf Copper-Xtreme MSA identifies "Company" as Gulf
Copper, and "Contractor" as Xtreme.

If at any time Contractor believes that a change in the work scope has occurred that would affect the agreed price, Contractor shall request an amendment to the Purchase Order from the appropriate Company representative in writing, without undue delay, but in any event, within five (5) days and prior to proceeding with such work.  Contractor shall not be entitled to any adjustment in price for any alleged variation unless it obtains an amendment to the Purchase Order duly signed by the Purchasing Manager.

Contractor shall perform all Work in a good and workmanlike manner and in strict compliance with the requirements contained in this Agreement, including Exhibit "A" (Insurance Requirements), Exhibit "B" (EEOC Supplement), Exhibit "C" (Visitor Safety Rules), all of which is adopted herein, and any applicable Purchase Order, each of which is incorporated by reference. Contractor warrants that the work will be the kind and quality described in the Purchase Order and will be free of defects in workmanship or material.

THIS WARRANTY IS EXCLUSIVE AND IS IN LIEU OF ALL OTHER WARRANTIES OF MERCHANTABILITY, FITNESS FOR PURPOSE, OR OTHER WARRANTIES OF QUALITY, WHETHER EXPRESSED OR IMPLIED.

\* \* \*

6.      PAYMENT

Company shall pay Contractor for Work furnished to Company, subject to Company's verification that Contractor has complied with all terms and conditions of this Agreement and any applicable Purchase Order. In the event Company should dispute any part of an invoice, undisputed portions thereof shall be paid; and upon resolution of all disputed items, a supplemental invoice will be submitted to Company for payment.

7.      Claims and Liens

Subcontractor indemnifies Company and Company's customer from and against all liens filed, and claims made, in connection with the Work, including losses arising therefrom (notwithstanding any negligence of any indemnified party).  If Contractor should default in discharging any lien or claim upon the facilities,

materials, labor, equipment, structures or the premises
upon which they we located arising out of the
performance of the Work, it shall immediately deliver a
written notice to Company explaining its reasons for
not discharging such liens or claims.  If Contractor
fails to deliver such notice, or if such notice is not
satisfactory in all respects to Company, Company shall
have the right, but not the obligation, after notice
thereof to Contractor, to settle by agreement or
otherwise provide for the discharge of such lien or
claim and deduct the cost of any such settlement from
monies otherwise owed to Contractor.  If sufficient
monies ere not owed to Contractor to cover such costs,
then Contractor shall indemnify and reimburse Company
from and against a11 losses incurred by Company in
discharging such liens and claims.  Contractor waives
any right to assert a lien or claim against any of
Company's customer's vessels, equipment, or other
property.

                          *  *  *

15.     <u>TERMINATION</u>

Company may, at any time, in its sole discretion and
with or without cause, terminate or suspend all or any
Work covered by this Agreement and/or any Purchase
Order issued hereunder.  In the event of termination by
Company, subject to Company's rights and remedies
provided for in this Section or otherwise available to
Company by contract, at law, or in equity, including
the right to withhold or offset amounts owing to
Company, Contractor shall be paid the applicable rates
stipulated in the Purchase Order (or for Work performed
on a lump sum basis, a pro-rata portion based upon the
percentage of the Work completed) for Work performed up
to the date of such termination or suspension, nor
shall Subcontractor be entitled to any other
compensation or damages for loss of anticipated profits
or otherwise.  On notice of such termination,
Contractor shall promptly remove its personnel,
machinery and equipment from the location and shall
further cooperate with Company or its designee to
ensure an orderly and expeditious transition and
completion of the Work.  If the Work is suspended by
Company, Contractor shall promptly resume performance
of the Work upon notice from Company.

* * *

19.    GOVERNING LAW

THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED IN
ACCORDANCE WITH THE GENERAL MARITIME LAW AND STATUTES
OF THE UNITED STATES WHERE APPLICABLE, EXCLUDING,
HOWEVER, ANY CONFLICTS OF LAW RULES THAT WOULD APPLY
THE LAWS OF ANY OTHER JURISDICTION.  IF GENERAL
MARITIME LAW DOES NOT APPLY, THIS CONTRACT WILL BE
INTERPRETED UNDER THE LAWS OF TEXAS.

In his affidavit of March 26, 2009, John Romero,
managing member of Xtreme, states, inter alia, that "Viking, or
Odin on Viking's behalf...gave Xtreme specific instructions as to
the schedule of work to be done, and dealt with Xtreme on a daily
basis."  (Docket No. 34-9).

Disputes arose regarding the work done by Xtreme, and,
on November 16, 2009, Odin directed a stop to "all coatings
related work on the rig."  (Docket No. 29-9).

Xtreme filed a proof of claim (Docket No. 26-4) in the
amount of $867,196.26, asserting the claim to be secured by the
Viking Producer.  Xtreme's proof of claim is supported by
Romero's affidavit, dated April 14, 2008.  The Romero affidavit
attached to the proof of claim[4] authenticates Xtreme's invoices,

---

[4]There are several affidavits submitted by Romero, in
connection with the instant motions.  In addition to the
affidavit dated April 14, 2008, and attached to Xtreme's proof of
claim (Docket No. 26-4), Romero executed affidavits on May 1,
2008 (Docket No. 38-9) and March 26, 2009 (Docket No. 34-9).
Gulf Copper objects to, and moves to strike, Romero's affidavit
of May 1, 2008.  (Docket No. 41) Viking objects to, and moves to
strike, Romero's affidavit of March 26, 2009.  (Docket No. 50).

copies of which are attached to the affidavit, as follows:

| Invoice Number | Date | Total Amount |
|---|---|---|
| 11934 | August 31, 2007 | $254.257.80 |
| 12136 | October 18, 2007 | $23,075.00 |
| 12508 | October 31, 2007 | $153,550.80 |
| 12509 | October 31, 2007 | $59,085.00 |
| 12510 | October 31, 2007 | $55,131.48 |
| 12645 | October 31, 2007 | $31,099.50 |
| 12550 | November 30, 2007 | $15,649.68 |

The invoices describe various services which Xtreme asserts it completed. The Romero affidavit attached to the proof of claim also includes a statement that Xtreme incurred additional unbilled charges of $275,350.00 with respect to repairs performed on the Viking Producer.

As to Xtreme invoice number 11934, dated August 31, 2007, Viking disputed the charge. Viking communicated its dispute to Gulf Copper by email (Docket No. 29-8) dated November 9, 2007.

In Romero's March 26, 2009 affidavit, which was attached to Xtreme's response to Viking's motion for summary judgment, Romero states in pertinent part:

> 3.   Xtreme never intended to give up its right to a maritime lien against the VIKING PRODUCER, despite the waiver of lien provision in the contract with Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair ("Gulf Copper").
>
> 4.   Xtreme initially relied upon the contract with Gulf Copper, but relied upon the maritime lien right as a fallback position in the event Gulf Copper were to default on its payment obligations to Xtreme.

---

The motions to strike are addressed below.

* * *

6.   Xtreme submitted its bid for blasting and painting
services to Odin Rig Services, Inc. ("Odin"), the
representative of Viking Offshore (USA) Inc., Viking
Producer Inc., Viking Prospector Inc., Viking Century
Inc., and Viking Drilling ASA (collectively "Viking"),
the vessel owner.  Viking, or Odin on Viking's behalf,
reviewed Xtreme's bid and directed that Xtreme be hired
as a subcontractor to perform blasting and painting
services on the vessel, gave Xtreme specific
instructions as to the schedule of work to be done, and
dealt with Xtreme on a daily basis.

7.   The Master Service Agreement ("MSA") between Gulf
Copper and Xtreme was not intended to secure any
particular benefit to Viking, as Xtreme serviced
several rigs not owned by Viking pursuant to the MSA.

## Conclusions of Law

### Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure,
as made applicable by Bankruptcy Rule 7056, a summary judgment
sought should be rendered if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that the movant
is entitled to judgment as a matter of law.  When a motion for
summary judgment is properly made and supported, an opposing
party may not rely merely on allegations or denials in its own
pleading; rather its response must set out specific facts showing
a genuine issue for trial.  Fed. R. Civ. P. 56(c), 56(e).

A party seeking summary judgment bears the initial
burden of demonstrating that no genuine issue of material fact

exists.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct.
2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment on an issue as to
which it does not bear the burden of proof at trial may
demonstrate: (i) an absence of evidence to support the non-moving
party's claims or (ii) the absence of a genuine issue of material
fact.  <u>Warfield v. Byron</u>, 436 F.3d 551 (5th Cir. 2006); <u>Condrey
v. SunTrust Bank of Ga.</u>, 429 F.3d 556 (5th Cir. 2005).

If the movant does not bear the burden of proof, the
movant must show the absence of sufficient evidence to support an
essential element of the opposing party's claim.  <u>Malacara v.
Garber</u>, 353 F.3d 393 (5th Cir. 2003).  If the movant shows the
absence of evidence regarding an element, the non-moving party
must respond with sufficient evidence to support the challenged
element of its case or present evidence to raise a material issue
of fact.  <u>Wheeler v. BL Dev. Corp.</u>, 415 F.3d 399 (5th Cir. 2005).

In determining whether genuine issues of material fact
exist, factual controversies are construed in the light most
favorable to the nonmovant.  <u>Rodriguez v. ConAgra Grocery
Products, Co.</u>, 436 F.3d 468 (5th Cir. 2006).

<u>Right to Assert Maritime Lien</u>

A person supplying necessaries on the order of an
entity with authority to bind the vessel has a maritime lien.
However, subcontractors hired by a general contractor are not

12

entitled to assert a lien on their own behalf unless it can be shown that an entity authorized to bind the ship controlled the selection of the subcontractor and its performance.  Lake Charles Stevedores, Inc. v. Professor Vladimir Popov M/V, 199 F.3d 220 (5th Cir. 1999).

In the instant case, Romero's affidavit of March 26, 2009 raises a genuine issue of material fact on the question of whether Odin controlled the selection of Xtreme and its performance of the subcontract.

Viking asserts that Romero's affidavit of March 26, 2009 should be stricken.  The arguments raised in the motion to strike at Docket No. 50 do not address Paragraph 6 of Romero's affidavit, as to Odin's directives regarding Xtreme's performance of the subcontract.  The court concludes that summary judgment should be denied as to Viking's assertion that Xtreme has no right to assert a maritime lien.

<u>Waiver</u>

A party seeking waiver of a maritime lien must show that the creditor "deliberately intended" to forego the lien and instead look solely to the owner's personal credit.  Maritrend, Inc. v. Serac & Co. (Shipping), Ltd., 348 F.3d 469 (5th Cir. 2003).

Courts have enforced contractual provisions waiving maritime liens in circumstances in which the party claiming a

lien has actual knowledge of the waiver provision.  See <u>Gulf Oil</u> <u>Trading v. M/V Caribe Mar</u>, 757 F.2d 743 (5th Cir. 1985).

Waiver of a maritime lien is an affirmative defense, on which the party asserting waiver bears the burden of proof.  <u>Pan</u> <u>American Bank of Miami v. Oil Screw Denise</u>, 613 F.2d 599 (5th Cir. 1980).

In the instant case, Viking has demonstrated the absence of a genuine issue of material fact as to the inclusion in the contract between Xtreme and Gulf Copper of a waiver provision.  (The Gulf Copper-Xtreme MSA, Docket No. 26-1, at para. 7).  Xtreme's assertion that it relied on the maritime lien, and not solely on the credit of Gulf Copper, is supported only by a conclusory statement in Romero's affidavit of March 26, 2009.  The conclusory statement by Romero is insufficient to raise a genuine issue of material fact.[5]

In addition to its argument based on the Romero affidavit, Xtreme argues that Viking lacks the capacity to assert the waiver provision, on grounds it is not a third party beneficiary of the contract between Xtreme and Gulf Copper.

The question of whether a vessel owner is a third party beneficiary of a contract between a supplier of necessaries to

---

[5]Viking moved to strike the Romero affidavit of March 26, 2009, asserting that, as to the conclusory statements in paragraphs 3 and 4 of the affidavit, they should be stricken because they are conclusory.  Viking's argument goes to the weight to be accorded the conclusory statements in the affidavit, not their admissibility.

the vessel and its subcontractor is a question of first
impression in this district.  The cases cited by Viking and by
Xtreme are not controlling.  Xtreme cites three cases in support
of its contention that a vessel owner is not a third party
beneficiary:  Thomson v. Espey Huston & Assoc., Inc., 899 S.W.2d
415 (Tex. App.—Austin 1995, no pet.); Jensen Construction Co. v.
Dallas County, 920 S.W.2d 761 (Tex. App.—Dallas 1996, writ
denied); B & C Contr. Co. v. Grain Handling Corp., 521 S.W.2d 98
(Tex. Civ. App.—Amarillo 1975, no writ).  Each of the cases cited
by Xtreme addresses a construction contract under Texas law, and
does not address maritime law.  Viking cites Shaw Constructors v.
ICF Kaiser Engineers, Inc., 395 F.3d 533 (5th Cir. 2004); Osborne
v. Howard Univ. Physicians, Inc., 904 A.2d 335 (D.C. 2006); and
Nodaway Valley Bank v. E.L. Crawford Constr., Inc., 126 S.W.3d
820 (Mo. Ct. App. 2004) for the general proposition that courts
find non-parties against whom parties have agreed to waive rights
to be a third party beneficiary.  Viking also cites Pratt-Shaw v.
Pilgrim's Pride Corp., 122 S.W.3d 825 (Tex. App.—Dallas 2003,
pet. denied); Temple EasTex, Inc. v. Old Orchard Creek Partners,
Ltd., 848 S.W.2d 724 (Tex. App.—Dallas 1992, writ denied) for the
proposition that Texas courts have held that a third party may be
a beneficiary of a waiver and release.  As with the cases cited
by Xtreme, the cases cited by Viking do not relate to maritime
liens.

Under maritime law, third-party beneficiary status is determined by looking to the intent of the parties.  A promise must be made directly for the benefit of a third party to support a claim by that third party under the contract.  See In re T.L. James & Co., 33 Fed. Appx. 703 (5th Cir. 2002), citing Atl. & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc., 750 F.2d 457, 459 n. 3 (5th Cir.1985).

In the instant case, although the contract between Gulf Copper and Xtreme does not identify Viking by name, it expressly provides for a waiver of liens "against any of Company's customer's vessels, equipment, or other property."  There is no dispute that Viking was a customer of Gulf Copper.  The court concludes that Viking is intended as a third-party beneficiary under the contract between Gulf Copper and Xtreme.  The court concludes that Viking may enforce Xtreme's waiver of liens against the Viking Producer.

<u>Quantum Meruit</u>

A party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished.  In re Kellogg Brown & Root, Inc., 166 S.W.3d 732 (Tex. 2005).

Courts have recognized three exceptions to the general rule that an express contract bars recovery on a quantum meruit theory: (1) where a plaintiff has partially performed an express

16

contract but was prevented from completing the contract because of the defendant's breach; (2) where a plaintiff partially performs a unilateral contract; and (3) where a breaching plaintiff in a construction contract partially performed under the contract and the defendant accepts and retains benefits arising as a direct result of the plaintiff's partial performance. <u>Pepi Corp. v. Brett Galliford</u>, 254 S.W.3d 457 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). <u>See</u> <u>also</u> <u>Murray v. Crest Const. Inc.</u>, 900 S.W.2d 342 (Tex. 1995); <u>Truly v. Austin</u>, 744 S.W.2d 934 (Tex. 1988).

In the instant case, there is a written contract between Gulf Copper and Xtreme. None of the recognized exceptions applies. The contract unambiguously provides that it covers all work performed by Xtreme for Gulf Copper. The court concludes that recovery in quantum meruit is barred by the existence of a written contract.

<u>Change to Purchase Order</u>

Gulf Copper argues that services related to five of Xtreme's invoices were not authorized services, because they required written changes to the purchase order. Neither the purchase order nor Xtreme's bid is in the properly authenticated summary judgment evidence. Romero states in his affidavit of March 26, 2009 that work was directed by Odin. The court concludes that there remain genuine issues of material fact as to

17

the questions of coverage of the purchase orders and the
necessity for any written changes.

<u>Disputed Invoices</u>

With respect to two invoices, Gulf Copper argues that
Xtreme is not entitled to payment, because Gulf Copper disputes
the quality of the work performed.  The question of the degree to
which the work was in fact performed, the quality of that work,
and whether Xtreme is entitled to recover, presents genuine
issues of material fact.  The argument asserted by Gulf Copper
goes to the amount and timing of payment, rather than whether
Xtreme has a claim against Gulf Copper.  The court concludes that
summary judgment on this ground should be denied.

<u>Suspension/Termination</u>

Gulf Copper argues that it is not liable under the
contract because some work occurred after Xtreme's work was
suspended.  The only summary judgment evidence which touches the
question presented is the November 16, 2007 directive to stop all
work related to coatings on the rig.  There is nothing in the
summary judgment evidence which ties Odin's directive to a
suspension or termination of Xtreme's services, and nothing
addressing the conduct of the parties after the November 16, 2007
directive.  The court concludes that summary judgment on this
ground should be denied.

<u>Attorney Fees</u>

In <u>Texas A&M Research Foundation v. Magna</u>
<u>Transportation, Inc.</u>, 338 F.3d 394 (5th Cir. 2003), the Fifth
Circuit held that "the general rule of maritime law that parties
bear their own costs, coupled with the need for uniformity in
federal maritime law, precludes the application of state
attorneys' fee statutes, such as [Tex. Civ Prac. & Rem. Code] §
38.001, to maritime contract disputes." The causes of action
asserted by Xtreme are causes under maritime law. The contract
between Gulf Copper and Xtreme states that it is governed by
maritime law. The court concludes that Xtreme is not entitled to
an award of attorney fees.

<u>Sworn Account</u>

Xtreme asserts that it is entitled to recover on its
suit, because it sued on a sworn account, and Gulf Copper's
answer is not verified, as required under Rule 185 of the Texas
Rules of Civil Procedure.

Rule 185 is a procedural rule, and not a rule of
substantive law. <u>Sneed Shipbuilding, Inc. v. Spanier Marine Co.</u>,
125 F.R.D. 438 (E.D. Tex. 1989), <u>citing</u> <u>Rizk v. Financial</u>
<u>Guardian Ins. Agency, Inc.</u>, 584 S.W.2d 860 (Tex. 1979). Federal
courts apply state substantive law in diversity cases, but apply
federal procedural law to the proceedings. <u>Hanna v. Plumer</u>, 380
U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The court

19

concludes that Rule 185 does not control.  The court concludes that the summary judgment sought by Xtreme should be denied.

Based on the foregoing, a separate conforming Judgment will be entered regarding the "Debtors' Motion for Summary Judgment on Proof of Claim Asserted by Xtreme Industries, LLC" (Docket No. 26), "Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair's Motion for Summary Judgment against Xtreme Industries, LLC" (Docket No. 29), and "Xtreme Industries, LLC's Motion for Partial Summary Judgment Against Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair" (Docket No. 32).

Signed at Houston, Texas on July 31, 2009.


LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE