UNITED STATES BANKRUPTCY COURT Southern District of Texas
ENTERED
08/25/2009

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| VIKING OFFSHORE (USA) INC., | ) | CASE NO. 08-31219-H3-11 |
| Debtors, | ) | |
| VIKING PROSPECTOR, INC., ET AL., | ) | |
| v. | ) | ADV. NO. 08-3296 |
| XTREME INDUSTRIES, L.L.C., | ) | |
| v. | ) | |
| GULF COPPER & MANUFACTURING CORP., | ) | |

MEMORANDUM OPINION[1]

The court has held a hearing on "Debtors' Motion for Summary Judgment on Proof of Claim Asserted by Xtreme Industries, LLC" (Docket No. 26), "Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair's Motion for Summary Judgment against Xtreme Industries, LLC" (Docket No. 29), and "Xtreme Industries, LLC's Motion for Partial Summary Judgment Against Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair" (Docket No. 32). The following are the

[1]The instant Memorandum Opinion is reissued, and a conforming Judgment will be entered, following the lifting of stay in the case under Chapter 11 of the Bankruptcy Code filed in the Western District of Louisiana by Xtreme Industries, L.L.C.

Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Background

Viking Offshore (USA) Inc., Viking Producer Inc., Viking Prospector Inc., Viking Century Inc., and Viking Drilling ASA ("Viking") filed voluntary petitions under Chapter 11 of the Bankruptcy Code on February 29, 2008. The cases were jointly administered, by order entered March 4, 2008, and were designated as a complex Chapter 11 case, by order entered March 10, 2008.

The claims addressed in the above captioned adversary proceeding were consolidated, by order entered October 2, 2008 (Docket No. 11), from a complaint[2] filed on May 2, 2008 by Xtreme Industries, LLC ("Xtreme") against Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair ("Gulf Copper"), in the United States District Court for the Southern District of Texas, in Civil Action No. 3:08cv102 (described by Xtreme as a suit on a sworn account pursuant to Rule 185 of the Texas Rules of Civil Procedure), and the complaint in the instant

[2]The complaint was referred to the Bankruptcy Court, and was docketed as Adversary No. 08-3339. It has been consolidated into the instant adversary proceeding.

adversary proceeding, filed on August 18, 2008 by Viking against Xtreme.

In the instant consolidated adversary proceeding, Xtreme, a subcontractor, asserts claims against Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair ("Gulf Copper"), a contractor, on breach of contract and quantum meruit theories, for work performed on Viking's drilling rig, the "Viking Producer." Xtreme also filed a proof of claim in the Viking Chapter 11 case, asserting a statutory maritime lien on the Viking Producer. Viking objects to Xtreme's claim, asserting that it has paid all invoices submitted directly by Xtreme, and that there is a failure of consideration because Xtreme's work was not satisfactory. Viking also seeks an affirmative recovery for what it asserts was damage caused by Xtreme.

Motions for Summary Judgment

Viking's Motion for Summary Judgment

In the instant motion filed by Viking, Viking seeks summary judgment determining that the maritime lien asserted by Xtreme is invalid, on grounds Gulf Copper, with which Xtreme contracted, lacked authority to bind the Viking Producer. Alternatively, Viking seeks summary judgment determining that any lien Xtreme may assert was waived, pursuant to provisions in the contract between Xtreme and Gulf Copper. In response, Xtreme argues that its lien is valid, because it was given daily

schedule directives by Odin Rig Services, Inc. ("Odin"), Viking's agent. Xtreme asserts that Viking lacks capacity to assert the waiver provision in the contract between Xtreme and Gulf Copper, because Viking was not a third-party beneficiary of the contract. Xtreme also asserts that the waiver provision is unenforceable, because Gulf Copper breached the contract by failing to pay Xtreme.

Gulf Copper's Motion for Summary Judgment

In the instant motion filed by Gulf Copper, Gulf Copper asserts five grounds for summary judgment. First, Gulf Copper seeks summary judgment determining that the claims made by Xtreme on five invoices and other unbilled charges are not authorized under the contract between Xtreme and Gulf Copper, asserting that the contract required that Xtreme request a written change to the purchase order, and Xtreme failed to do so. Second, Gulf Copper seeks summary judgment determining that Xtreme is not entitled to payment on two additional invoices, on grounds there is a dispute as to the quality of the work represented in the two invoices. Third, Gulf Copper seeks summary judgment determining that the unbilled charges are barred by a contractual provision addressing suspension or termination of the work. Fourth, Gulf Copper seeks summary judgment determining that Xtreme is not entitled to assert recovery on a quantum meruit theory, due to the existence of a written contract. Fifth, Gulf Copper seeks summary judgment

determining that Xtreme is not entitled to an award of attorney fees. In response, Xtreme argues that it was directed to do the work covered by the invoices and unbilled charges by Odin. Xtreme asserts that genuine issues of material fact exist regarding the remaining issues on which Gulf Copper seeks summary judgment.

Xtreme's Motion for Summary Judgment

In the instant motion filed by Xtreme, Xtreme asserts that it is entitled to summary judgment because it filed suit on a sworn account, and Gulf Copper has not filed a verified denial. In response, Gulf Copper asserts that there are genuine issues of material fact as to whether Gulf Copper is liable for the debt. Also, Gulf Copper argues that the Texas rule of civil procedure on which Xtreme relies is a procedural rule that does not apply in federal court.

The Summary Judgment Evidence

On August 24, 2006, Viking, acting through Odin, entered into a contract with Gulf Copper (the "Viking-Gulf Copper MSA") under which Gulf Copper would sell such products and services to Viking as Viking would order, by purchase order. (Docket No. 26-2). The Viking-Gulf Copper MSA provides in pertinent part[3]:

11.3 Supplier shall be entitled to exercise a

[3]The Viking-Gulf Copper MSA identifies "Buyer" as Viking, and "Supplier" as Gulf Copper.

> maritime lien upon the work or the subject vessel, its equipment and its appurtenances for all sums due to the Supplier in the event of Buyer's failure to tender payment on the terms outlined in Article 3.
>
> 11.4 Except for Supplier's right to assert a maritime lien in the event of Buyer's failure to tender payment on the terms outlined in Article 3, Supplier agrees to pay all claims for labor, materials, services and supplies furnished by Supplier hereunder and agrees to allow no lien or charge to be fixed upon the rigs to which products and services are to be provided, or other property of Buyer or the party for whom Buyer is performing services.

On November 15, 2006, Gulf Copper entered into a contract (the "Gulf Copper-Xtreme MSA") with Xtreme, under which Gulf Copper would issue purchase orders for work, and Xtreme would perform the work. (Docket No. 26-1). The Gulf Copper-Xtreme MSA provides in pertinent part[4]:

> 1. SCOPE OF AGREEMENT
>
> * * *
>
> As between the parties hereto, this Agreement shall control and govern all Work and any applicable or and/or written specifications, including Purchase Orders, which are in any way connected with Company including, but not limited to, the performance of all Work by Contractor, its affiliates, and/or its and their subcontractors for or with Company or its parent, holding or affiliated companies.
>
> 2. PERFORMANCE OF THE WORK
>
> From time to time, Company may issue individual Purchase Orders requesting Contractor to perform certain Work. In the event of a conflict between this Agreement and any Purchase Orders issued hereunder, the provisions of this Agreement shall govern over the

[4] The Gulf Copper-Xtreme MSA identifies "Company" as Gulf Copper, and "Contractor" as Xtreme.

conflicting terms of the Purchase Order. The Work shall be performed in strict conformity with the terms, conditions, specifications and requirements contained in, attached to, or referenced by the Purchase Order.

If at any time Contractor believes that a change in the work scope has occurred that would affect the agreed price, Contractor shall request an amendment to the Purchase Order from the appropriate Company representative in writing, without undue delay, but in any event, within five (5) days and prior to proceeding with such work. Contractor shall not be entitled to any adjustment in price for any alleged variation unless it obtains an amendment to the Purchase Order duly signed by the Purchasing Manager.

Contractor shall perform all Work in a good and workmanlike manner and in strict compliance with the requirements contained in this Agreement, including Exhibit "A" (Insurance Requirements), Exhibit "B" (EEOC Supplement), Exhibit "C" (Visitor Safety Rules), all of which is adopted herein, and any applicable Purchase Order, each of which is incorporated by reference. Contractor warrants that the work will be the kind and quality described in the Purchase Order and will be free of defects in workmanship or material.

THIS WARRANTY IS EXCLUSIVE AND IS IN LIEU OF ALL OTHER WARRANTIES OF MERCHANTABILITY, FITNESS FOR PURPOSE, OR OTHER WARRANTIES OF QUALITY, WHETHER EXPRESSED OR IMPLIED.

* * *

6. PAYMENT

Company shall pay Contractor for Work furnished to Company, subject to Company's verification that Contractor has complied with all terms and conditions of this Agreement and any applicable Purchase Order. In the event Company should dispute any part of an invoice, undisputed portions thereof shall be paid; and upon resolution of all disputed items, a supplemental invoice will be submitted to Company for payment.

7. Claims and Liens

Subcontractor indemnifies Company and Company's customer from and against all liens filed, and claims made, in connection with the Work, including losses arising therefrom (notwithstanding any negligence of any indemnified party). If Contractor should default in discharging any lien or claim upon the facilities, materials, labor, equipment, structures or the premises upon which they we located arising out of the performance of the Work, it shall immediately deliver a written notice to Company explaining its reasons for not discharging such liens or claims. If Contractor fails to deliver such notice, or if such notice is not satisfactory in all respects to Company, Company shall have the right, but not the obligation, after notice thereof to Contractor, to settle by agreement or otherwise provide for the discharge of such lien or claim and deduct the cost of any such settlement from monies otherwise owed to Contractor. If sufficient monies ere not owed to Contractor to cover such costs, then Contractor shall indemnify and reimburse Company from and against a11 losses incurred by Company in discharging such liens and claims. Contractor waives any right to assert a lien or claim against any of Company's customer's vessels, equipment, or other property.

* * *

15. TERMINATION

Company may, at any time, in its sole discretion and with or without cause, terminate or suspend all or any Work covered by this Agreement and/or any Purchase Order issued hereunder. In the event of termination by Company, subject to Company's rights and remedies provided for in this Section or otherwise available to Company by contract, at law, or in equity, including the right to withhold or offset amounts owing to Company, Contractor shall be paid the applicable rates stipulated in the Purchase Order (or for Work performed on a lump sum basis, a pro-rata portion based upon the percentage of the Work completed) for Work performed up to the date of such termination or suspension, nor shall Subcontractor be entitled to any other compensation or damages for loss of anticipated profits or otherwise. On notice of such termination,

> Contractor shall promptly remove its personnel, machinery and equipment from the location and shall further cooperate with Company or its designee to ensure an orderly and expeditious transition and completion of the Work. If the Work is suspended by Company, Contractor shall promptly resume performance of the Work upon notice from Company.
>
> * * *
>
> 19. GOVERNING LAW
>
> THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE GENERAL MARITIME LAW AND STATUTES OF THE UNITED STATES WHERE APPLICABLE, EXCLUDING, HOWEVER, ANY CONFLICTS OF LAW RULES THAT WOULD APPLY THE LAWS OF ANY OTHER JURISDICTION. IF GENERAL MARITIME LAW DOES NOT APPLY, THIS CONTRACT WILL BE INTERPRETED UNDER THE LAWS OF TEXAS.

In his affidavit of March 26, 2009, John Romero, managing member of Xtreme, states, inter alia, that "Viking, or Odin on Viking's behalf...gave Xtreme specific instructions as to the schedule of work to be done, and dealt with Xtreme on a daily basis." (Docket No. 34-9).

Disputes arose regarding the work done by Xtreme, and, on November 16, 2009, Odin directed a stop to "all coatings related work on the rig." (Docket No. 29-9).

Xtreme filed a proof of claim (Docket No. 26-4) in the amount of $867,196.26, asserting the claim to be secured by the Viking Producer. Xtreme's proof of claim is supported by Romero's affidavit, dated April 14, 2008. The Romero affidavit

attached to the proof of claim[5] authenticates Xtreme's invoices, copies of which are attached to the affidavit, as follows:

| Invoice Number | Date | Total Amount |
|---|---|---|
| 11934 | August 31, 2007 | $254.257.80 |
| 12136 | October 18, 2007 | $23,075.00 |
| 12508 | October 31, 2007 | $153,550.80 |
| 12509 | October 31, 2007 | $59,085.00 |
| 12510 | October 31, 2007 | $55,131.48 |
| 12645 | October 31, 2007 | $31,099.50 |
| 12550 | November 30, 2007 | $15,649.68 |

The invoices describe various services which Xtreme asserts it completed. The Romero affidavit attached to the proof of claim also includes a statement that Xtreme incurred additional unbilled charges of $275,350.00 with respect to repairs performed on the Viking Producer.

As to Xtreme invoice number 11934, dated August 31, 2007, Viking disputed the charge. Viking communicated its dispute to Gulf Copper by email (Docket No. 29-8) dated November 9, 2007.

In Romero's March 26, 2009 affidavit, which was attached to Xtreme's response to Viking's motion for summary judgment, Romero states in pertinent part:

---

[5]There are several affidavits submitted by Romero, in connection with the instant motions. In addition to the affidavit dated April 14, 2008, and attached to Xtreme's proof of claim (Docket No. 26-4), Romero executed affidavits on May 1, 2008 (Docket No. 38-9) and March 26, 2009 (Docket No. 34-9). Gulf Copper objects to, and moves to strike, Romero's affidavit of May 1, 2008. (Docket No. 41) Viking objects to, and moves to strike, Romero's affidavit of March 26, 2009. (Docket No. 50). The motions to strike are addressed below.

3. Xtreme never intended to give up its right to a maritime lien against the VIKING PRODUCER, despite the waiver of lien provision in the contract with Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair ("Gulf Copper").

4. Xtreme initially relied upon the contract with Gulf Copper, but relied upon the maritime lien right as a fallback position in the event Gulf Copper were to default on its payment obligations to Xtreme.

* * *

6. Xtreme submitted its bid for blasting and painting services to Odin Rig Services, Inc. ("Odin"), the representative of Viking Offshore (USA) Inc., Viking Producer Inc., Viking Prospector Inc., Viking Century Inc., and Viking Drilling ASA (collectively "Viking"), the vessel owner. Viking, or Odin on Viking's behalf, reviewed Xtreme's bid and directed that Xtreme be hired as a subcontractor to perform blasting and painting services on the vessel, gave Xtreme specific instructions as to the schedule of work to be done, and dealt with Xtreme on a daily basis.

7. The Master Service Agreement ("MSA") between Gulf Copper and Xtreme was not intended to secure any particular benefit to Viking, as Xtreme serviced several rigs not owned by Viking pursuant to the MSA.

## Conclusions of Law

### Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7056, a summary judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. When a motion for

summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c), 56(e).

A party seeking summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment on an issue as to which it does not bear the burden of proof at trial may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact. Warfield v. Byron, 436 F.3d 551 (5th Cir. 2006); Condrey v. SunTrust Bank of Ga., 429 F.3d 556 (5th Cir. 2005).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. Malacara v. Garber, 353 F.3d 393 (5th Cir. 2003). If the movant shows the absence of evidence regarding an element, the non-moving party must respond with sufficient evidence to support the challenged element of its case or present evidence to raise a material issue of fact. Wheeler v. BL Dev. Corp., 415 F.3d 399 (5th Cir. 2005).

In determining whether genuine issues of material fact exist, factual controversies are construed in the light most

favorable to the nonmovant. Rodriguez v. ConAgra Grocery Products, Co., 436 F.3d 468 (5th Cir. 2006).

Right to Assert Maritime Lien

A person supplying necessaries on the order of an entity with authority to bind the vessel has a maritime lien. However, subcontractors hired by a general contractor are not entitled to assert a lien on their own behalf unless it can be shown that an entity authorized to bind the ship controlled the selection of the subcontractor and its performance. Lake Charles Stevedores, Inc. v. Professor Vladimir Popov M/V, 199 F.3d 220 (5th Cir. 1999).

In the instant case, Romero's affidavit of March 26, 2009 raises a genuine issue of material fact on the question of whether Odin controlled the selection of Xtreme and its performance of the subcontract.

Viking asserts that Romero's affidavit of March 26, 2009 should be stricken. The arguments raised in the motion to strike at Docket No. 50 do not address Paragraph 6 of Romero's affidavit, as to Odin's directives regarding Xtreme's performance of the subcontract. The court concludes that summary judgment should be denied as to Viking's assertion that Xtreme has no right to assert a maritime lien.

Waiver

A party seeking waiver of a maritime lien must show that the creditor "deliberately intended" to forego the lien and instead look solely to the owner's personal credit. Maritrend, Inc. v. Serac & Co. (Shipping), Ltd., 348 F.3d 469 (5th Cir. 2003).

Courts have enforced contractual provisions waiving maritime liens in circumstances in which the party claiming a lien has actual knowledge of the waiver provision. See Gulf Oil Trading v. M/V Caribe Mar, 757 F.2d 743 (5th Cir. 1985).

Waiver of a maritime lien is an affirmative defense, on which the party asserting waiver bears the burden of proof. Pan American Bank of Miami v. Oil Screw Denise, 613 F.2d 599 (5th Cir. 1980).

In the instant case, Viking has demonstrated the absence of a genuine issue of material fact as to the inclusion in the contract between Xtreme and Gulf Copper of a waiver provision. (The Gulf Copper-Xtreme MSA, Docket No. 26-1, at para. 7). Xtreme's assertion that it relied on the maritime lien, and not solely on the credit of Gulf Copper, is supported only by a conclusory statement in Romero's affidavit of March 26, 2009. The conclusory statement by Romero is insufficient to raise a genuine issue of material fact.[6]

[6]Viking moved to strike the Romero affidavit of March 26, 2009, asserting that, as to the conclusory statements in

In addition to its argument based on the Romero affidavit, Xtreme argues that Viking lacks the capacity to assert the waiver provision, on grounds it is not a third party beneficiary of the contract between Xtreme and Gulf Copper.

The question of whether a vessel owner is a third party beneficiary of a contract between a supplier of necessaries to the vessel and its subcontractor is a question of first impression in this district. The cases cited by Viking and by Xtreme are not controlling. Xtreme cites three cases in support of its contention that a vessel owner is not a third party beneficiary: Thomson v. Espey Huston & Assoc., Inc., 899 S.W.2d 415 (Tex. App.—Austin 1995, no pet.); Jensen Construction Co. v. Dallas County, 920 S.W.2d 761 (Tex. App.—Dallas 1996, writ denied); B & C Contr. Co. v. Grain Handling Corp., 521 S.W.2d 98 (Tex. Civ. App.—Amarillo 1975, no writ). Each of the cases cited by Xtreme addresses a construction contract under Texas law, and does not address maritime law. Viking cites Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533 (5th Cir. 2004); Osborne v. Howard Univ. Physicians, Inc., 904 A.2d 335 (D.C. 2006); and Nodaway Valley Bank v. E.L. Crawford Constr., Inc., 126 S.W.3d 820 (Mo. Ct. App. 2004) for the general proposition that courts find non-parties against whom parties have agreed to waive rights

---

paragraphs 3 and 4 of the affidavit, they should be stricken because they are conclusory. Viking's argument goes to the weight to be accorded the conclusory statements in the affidavit, not their admissibility.

to be a third party beneficiary. Viking also cites Pratt-Shaw v. Pilgrim's Pride Corp., 122 S.W.3d 825 (Tex. App.—Dallas 2003, pet. denied); Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd., 848 S.W.2d 724 (Tex. App.—Dallas 1992, writ denied) for the proposition that Texas courts have held that a third party may be a beneficiary of a waiver and release. As with the cases cited by Xtreme, the cases cited by Viking do not relate to maritime liens.

Under maritime law, third-party beneficiary status is determined by looking to the intent of the parties. A promise must be made directly for the benefit of a third party to support a claim by that third party under the contract. See In re T.L. James & Co., 33 Fed. Appx. 703 (5th Cir. 2002), citing Atl. & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc., 750 F.2d 457, 459 n. 3 (5th Cir.1985).

In the instant case, although the contract between Gulf Copper and Xtreme does not identify Viking by name, it expressly provides for a waiver of liens "against any of Company's customer's vessels, equipment, or other property." There is no dispute that Viking was a customer of Gulf Copper. The court concludes that Viking is intended as a third-party beneficiary under the contract between Gulf Copper and Xtreme. The court concludes that Viking may enforce Xtreme's waiver of liens against the Viking Producer.

Quantum Meruit

A party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished. In re Kellogg Brown & Root, Inc., 166 S.W.3d 732 (Tex. 2005).

Courts have recognized three exceptions to the general rule that an express contract bars recovery on a quantum meruit theory: (1) where a plaintiff has partially performed an express contract but was prevented from completing the contract because of the defendant's breach; (2) where a plaintiff partially performs a unilateral contract; and (3) where a breaching plaintiff in a construction contract partially performed under the contract and the defendant accepts and retains benefits arising as a direct result of the plaintiff's partial performance. Pepi Corp. v. Brett Galliford, 254 S.W.3d 457 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). See also Murray v. Crest Const. Inc., 900 S.W.2d 342 (Tex. 1995); Truly v. Austin, 744 S.W.2d 934 (Tex. 1988).

In the instant case, there is a written contract between Gulf Copper and Xtreme. None of the recognized exceptions applies. The contract unambiguously provides that it covers all work performed by Xtreme for Gulf Copper. The court concludes that recovery in quantum meruit is barred by the existence of a written contract.

Change to Purchase Order

Gulf Copper argues that services related to five of Xtreme's invoices were not authorized services, because they required written changes to the purchase order. Neither the purchase order nor Xtreme's bid is in the properly authenticated summary judgment evidence. Romero states in his affidavit of March 26, 2009 that work was directed by Odin. The court concludes that there remain genuine issues of material fact as to the questions of coverage of the purchase orders and the necessity for any written changes.

Disputed Invoices

With respect to two invoices, Gulf Copper argues that Xtreme is not entitled to payment, because Gulf Copper disputes the quality of the work performed. The question of the degree to which the work was in fact performed, the quality of that work, and whether Xtreme is entitled to recover, presents genuine issues of material fact. The argument asserted by Gulf Copper goes to the amount and timing of payment, rather than whether Xtreme has a claim against Gulf Copper. The court concludes that summary judgment on this ground should be denied.

Suspension/Termination

Gulf Copper argues that it is not liable under the contract because some work occurred after Xtreme's work was suspended. The only summary judgment evidence which touches the

question presented is the November 16, 2007 directive to stop all work related to coatings on the rig. There is nothing in the summary judgment evidence which ties Odin's directive to a suspension or termination of Xtreme's services, and nothing addressing the conduct of the parties after the November 16, 2007 directive. The court concludes that summary judgment on this ground should be denied.

Attorney Fees

In Texas A&M Research Foundation v. Magna Transportation, Inc., 338 F.3d 394 (5th Cir. 2003), the Fifth Circuit held that "the general rule of maritime law that parties bear their own costs, coupled with the need for uniformity in federal maritime law, precludes the application of state attorneys' fee statutes, such as [Tex. Civ Prac. & Rem. Code] § 38.001, to maritime contract disputes." The causes of action asserted by Xtreme are causes under maritime law. The contract between Gulf Copper and Xtreme states that it is governed by maritime law. The court concludes that Xtreme is not entitled to an award of attorney fees.

Sworn Account

Xtreme asserts that it is entitled to recover on its suit, because it sued on a sworn account, and Gulf Copper's answer is not verified, as required under Rule 185 of the Texas

Rules of Civil Procedure.

Rule 185 is a procedural rule, and not a rule of substantive law. Sneed Shipbuilding, Inc. v. Spanier Marine Co., 125 F.R.D. 438 (E.D. Tex. 1989), citing Rizk v. Financial Guardian Ins. Agency, Inc., 584 S.W.2d 860 (Tex. 1979). Federal courts apply state substantive law in diversity cases, but apply federal procedural law to the proceedings. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The court concludes that Rule 185 does not control. The court concludes that the summary judgment sought by Xtreme should be denied.

Based on the foregoing, a separate conforming Judgment will be entered regarding the "Debtors' Motion for Summary Judgment on Proof of Claim Asserted by Xtreme Industries, LLC" (Docket No. 26), "Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair's Motion for Summary Judgment against Xtreme Industries, LLC" (Docket No. 29), and "Xtreme Industries, LLC's Motion for Partial Summary Judgment Against Gulf Copper & Manufacturing Corporation a/k/a Gulf Copper Dry Dock & Rig Repair" (Docket No. 32).

Signed at Houston, Texas on August 25, 2009.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE